UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KRISTIN VITALE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-00578-JRO-MKK |
| | ) | |
| RHYGAN KOCHACK TAVERN, LLC d/b/a BIGSYS SPORTS GRILL, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER DIRECTING DEFAULT JUDGMENT**

Before the Court is Plaintiff Kristin Vitale's motion for default judgment against Defendant Rhygan Kochack Tavern, LLC, doing business as Bigsy's Sports Grill ("Bigsy's"). Dkt. 43. Defendant did not file a response. For the reasons that follow, and pursuant to Federal Rule of Civil Procedure 55, Plaintiff's motion is **GRANTED**, and Defendant is ordered to pay in the aggregate the amount of $181,472.48. Dkt. [43].

**I. BACKGROUND**

Unless otherwise stated, the following facts are taken from the Complaint and are accepted as true based on the Clerk's entry of default. *See* Fed. R. Civ. P. 55(b); *Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1994). The Court also finds additional facts summarized in this Order are true by a preponderance of the evidence based on the uncontested evidence submitted by Plaintiff and the Court's own observations of Plaintiff's testimony during the damages hearing.

### A. Facts

Bigsy's is a bar and restaurant that operates in the Southern District of Indiana. Dkt. 1 ¶ 2. Vitale, a woman, was employed as a server at Bigsy's from May 2019 to April 3, 2024. *Id.* ¶¶ 10, 12. In 2023, Matthew and Lita Nichols (the Nicholses) bought Bigsy's. *Id.* ¶ 14. They employed Kristina Crockett as general manager. *Id.*

Vitale became concerned Crockett was working to damage her reputation with the Nicholses, by making false accusations and by trying to reduce Vitale's scheduled hours. *Id.* ¶¶ 15–21. Vitale alerted the Nicholses to her concerns. *Id.* ¶ 17. For example, in January 2024, Crockett changed Vitale's schedule to remove her from a desirable Thursday lunch shift that she had worked for years. *Id.* ¶ 19. Vitale's schedule was updated to again include the Thursday shift after she discussed her concerns with Matthew Nichols. *Id.* ¶ 20.

On April 3, 2024, Crockett and Lita Nichols met with Vitale at Bigsy's. *Id.* ¶ 22. Crockett and Lita Nichols purported to be in receipt of text messages from the wife of a frequent customer of Bigsy's. *Id.* The messages, among other things, accused Vitale of having sexual encounters with patrons of Bigsy's in exchange for $300–$500. *Id.* The messages stated Vitale did this by letting customers drink at Bigsy's for free without ringing up the drinks, taking customers' cash payments for herself, and then accompanying them to a nearby hotel after work. *Id.* Crockett and Lita Nichols confronted Vitale with these accusations, and accused Vitale of flirting with Matthew Nichols to get her shifts back. *Id.* At the

end of the meeting, Crockett and Lita Nichols terminated Vitale's employment with Bigsy's. *Id.* ¶ 24.

Vitale maintains the accusations presented in the April 3 meeting are false. *Id.*; Dkt. 1 ¶¶ 23, 26.

Crockett and Nichols's accusations against Vitale were made loudly where Bigsy's customers and kitchen staff could hear them. Dkt. 43-1 ¶ 5. And Vitale had trouble finding work after leaving Bigsy's. Dkt. 43-1 ¶¶ 8, 17. She testified that she heard from a connection at another bar, Shakers, that it was rumored she was fired from Bigsy's for stealing. These rumors were bolstered by Bigsy's unusual social media posts, including one suggesting Bigsy's had knowledge of patrons' infidelity. *See* Dkt. 43-11. Vitale eventually found employment at White Horse Pub, where she earned less in tips despite working longer hours. *Id.* ¶¶ 9–13.

Vitale's termination adversely impacted her mental and emotional health. After her termination from Bigsy's, Vitale avoided restaurants and bars she previously enjoyed out of fear that Crockett or others connected to the accusations would be there. *Id.* ¶ 18. Vitale experienced intense anxiety when she encountered people associated with Bigsy's in public, as she worried they thought of her as a thief or prostitute.

Vitale began seeing a psychiatric-mental health nurse practitioner for depression, anxiety, and panic attacks after her termination. *Id.* ¶ 20. Vitale was prescribed medication for depression and anxiety. *Id.* ¶ 19. This was the first time in her adult life that she took such medications for her mental health. *Id.*

Vitale and her romantic partner, James Mathis, both described strain on their relationship after Vitale's termination from Bigsy's. Vitale said she became a recluse. Mathis reported Vitale would cry often and told him she felt worthless and hurt. Dkt. 43-14 ¶ 4. Vitale's longer hours and night shifts at White Horse Pub meant she spent less time with Mathis, which also strained their relationship. Dkt. 43-1 ¶ 21. Ultimately, Vitale testified, she left her job at White Horse Pub in April 2026 to become a full-time homemaker to preserve her relationship with Mathis and reduce stress in her life.

**B. Procedural History**

Vitale filed suit on March 26, 2025, bringing federal claims under Title VII and the Fair Labor Standards Act and state-law claims under theories of defamation per se and the Indiana Wage Claims Statute. *See generally* Dkt. 1.

While Defendants initially failed to pay Vitale her last paycheck and final tips on credit card bills, they tendered payment of $740.29 in July 2025. *Id.* ¶ 26; Dkt. 43-12.

Defendant Bigsy's appeared by counsel in this matter, answered Vitale's complaint, and brought counterclaims. Dkts. 8, 10. In February 2026, Bigsy's counsel moved to withdraw. Dkt. 31. Magistrate Judge M. Kendra Klump held an *ex parte* status conference on March 9 to discuss the motion, in part because granting the motion would leave Bigsy's, a limited liability entity, unrepresented in this matter. Dkt. 34. Despite the Magistrate Judge's order requiring Bigsy's representative, as well as their counsel, to attend the conference, Bigsy's

representative failed to appear. Dkt. 35. As the Magistrate Judge previously summarized, the Court

> granted Defendant's counsel's motion to withdraw appearance, and ordered Defendant to secure new counsel by March 31, 2026, or show cause by April 7, 2026, why the Court should not enter a judgment of default in Plaintiff's favor due to Defendant's failure to appear to defend in this case and to prosecute its counterclaim(s).

Dkt. 40 (citing dkt. 36). In the months since this order, Bigsy's did not (1) cause new counsel to appear in this matter, (2) attend subsequent status conferences via representative, or (3) otherwise engage in the litigation process. Dkt. 39; *see also* dkt. 40. On May 28, 2026, the Court adopted the Magistrate Judge's report and recommendation, granting Plaintiff's oral motion for default and dismissing Bigsy's counterclaims based on Bigsy's failure to defend and failure to prosecute its counterclaims. Dkt. 41.

Vitale then moved for default judgment. Dkt. 43. The Court held a hearing to consider evidence on Plaintiff's claims for compensatory damages and defamation damages. Dkt. 50. Defendant failed to appear at the hearing despite receiving notice. The Court took Vitale's motion for default judgment under advisement. *Id.* This matter is now ripe for the Court's ruling.

## II. LIABILITY

Federal Rule of Civil Procedure 55 sets forth a "two-step process" for obtaining a default judgment. *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016). First, the plaintiffs must seek an entry of default from the Clerk. Fed. R. Civ. P. 55(a); *see VLM Food*, 811 F.3d at 255 (explaining

"[t]he basic effect of an entry of default is that upon default, the well-pleaded allegations of a complaint relating to liability are taken as true" (cleaned up)).

Second, the moving party must seek entry of a default judgment against the defaulting party. Fed. R. Civ. P. 55(b). The court may enter a default judgment against a party who has failed to plead or otherwise defend itself. Fed. R. Civ. P. 55(b)(2). The decision to grant or deny a default judgment is within the court's discretion. *See Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014) (indicating a decision on default judgment is reviewed for abuse of discretion).

As previously noted, the Clerk entered default against Defendant on May 28, 2026. Dkt. 42. That was step one under Rule 55. That entry of default "'d[id] not of itself determine rights,'" but had the effect of establishing the facts of Plaintiffs' well-plead allegations relating to liability. *VLM Food*, 811 F.3d at 255 (quoting *United States v. Borchardt*, 470 F.2d 257, 260 (7th Cir. 1972) and citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods.*, Inc., 722 F.2d 1319, 1323 (7th Cir. 1983)). Unlike allegations as to Bigsy's liability, damages must be proved. A hearing is therefore required unless "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007).

## III. RELIEF

For her relief, Vitale seeks backpay under her Title VII claims, which is capable of ascertainment from definite figures. She also seeks $50,000.00 in compensatory damages under her Title VII claims for emotional distress,

humiliation, and reputational harm. Dkt. 44 at 5. Finally, she seeks $25,000.00 in damages for her defamation claim. *Id.* at 7.[1] Vitale also asks for an award of prejudgment interest on her backpay claim.[2] Dkt. 51 at 3–4, 5.

**A. Backpay & Prejudgment Interest**

Vitale has established her right to back pay of $96,221.63. *See* dkt. 43-1 ¶¶ 10–12; Dkt. 43-2; Dkt. 43-7. This is calculated based on the amount Vitale would have earned at Bigsy's based on her weekly earnings ($1,341.16 per week) multiplied by the number of weeks between Vitale's termination from Bigsy's and her April 2026 exit from the workforce (105 weeks and 3 days) minus all her earnings at White Horse Pub ($45,174.95). Dkt. 43-2. The Court awards prejudgment interest based on the applicable prime interest rates. *See Frey v. Coleman*, 903 F.3d 671, 682 (7th Cir. 2018). The Court accordingly awards prejudgment interest in the amounts Vitale requests:

| Time Period | Damages | Interest Rate | Interest |
|---|---|---|---|
| Apr. 4, 2024–Apr. 11, 2026 | $96,221.63 | Daily prime rates | $7,033.35 |
| Apr. 12–Sept. 16, 2026 | | 6.75% | $2,811.52 |
| Sept. 17–Oct. 9, 2026 | | 7.00% | $405.98 |
| **Total Prejudgment Interest** | | | **$10,250.85** |

---

[1] While Vitale initially sought statutory damages under the Indiana Wage Claim Act, she no longer pursues the statutory damages. *See* dkt. 51 at 1. Accordingly, the Court does not award them.

[2] Vitale also seeks post judgment interest in accord with 28 U.S.C. § 1961. Post judgment interest is automatically applied to any monetary judgment and does not require an explicit award from the Court.

### B. Compensatory & Defamation *per se* Damages

The Court heard Vitale's evidence regarding her request for compensatory and defamation damages, including the facts summarized *supra*. *See* dkt. 50.

The compensatory damages compensate Vitale for the emotional distress she experienced due to Defendant's conduct, including panic attacks, anxiety, depression, and strain on her interpersonal relationships, which she did not experience before the wrongdoing described in the complaint. As explained at the hearing, Vitale has received therapy and medication as a result of the emotional harm caused by Defendant. A plaintiff's testimony about her emotional distress can suffice to support an award for nonpecuniary loss in some cases. *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1022 (7th Cir. 2016) (quoting *Tullis v. Townley Eng'g & Mfg. Co.*, 243 F.3d 1058, 1068 (7th Cir. 2001)) (collecting cases awarding damages from $50,000.00 to $175,000.00 on Title VII claims). Here, Vitale had more than her own testimony. She also introduced evidence of her therapy appointments and supported her damages via a declaration from her romantic partner.

The defamation damages compensate Vitale for injury done to her reputation because of Defendant's statements, including their false accusations that Vitale engaged in prostitution and theft. The Court now finds in favor of Plaintiff Kristen Vitale on her claims against Defendant Bigsy's in the amount of $50,000.00 in Title VII compensatory damages and $25,000.00 in defamation damages.

## IV. CONCLUSION

Plaintiff's motion for default judgment, dkt. [43], is **GRANTED**. Final judgment shall issue by separate entry. The **clerk is directed** to file judgment in favor of Plaintiffs and against Defendant. Defendant is ordered to pay in the aggregate amount of $181,472.48, itemized as follows:

| **Category** | **Amount** |
|---|---|
| Title VII back pay | $96,221.63 |
| Prejudgment interest | $10,250.85 |
| Compensatory damages – Title VII | $50,000.00 |
| Defamation damages – Indiana law | $25,000.00 |
| **Total:** | $181,472.48 |

Plaintiff's request for attorney fees and taxable costs is not included in this order and may be presented post judgment by separate timely motion and bill of costs under Federal Rule of Civil Procedure 54(d), applicable fee-shifting statutes, and S.D. Ind. Local Rule 54-1.

**SO ORDERED.**

Date: 10/9/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record

Rhygan Kochack Tavern, LLC
Attn: Matthew Nichols & Lita Nichols
5900 North 450 West
Fairland, IN 46126